UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA     *     **CRIMINAL NO: 18-106**

v.     *     **SECTION: "M"**

FABER ADRIAN RAMIREZ
MARMOLEJO     *

       *     *     *

## FACTUAL BASIS

The defendant, **FABER ADRIAN RAMIREZ MARMOLEJO**, has agreed to plead guilty to Count Two of the two-count Third Superseding Indictment. Count Two charges the defendant with conspiring to distribute and possess with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine hydrochloride, while upon the high seas on board a vessel subject to the jurisdiction of the United States, in violation of Title 46, United States Code, Sections 70503(a)(1) and 70506(a) and (b), and Title 21, United States Code, Section 960(b)(1)(B)(ii).

Should this matter have proceeded to trial, the government would have proven, through the introduction of competent testimony and other admissible evidence, the following facts, beyond a reasonable doubt, to support the allegations in the Third Superseding Indictment:

On April 22, 2018, the United States Coast Guard (USCG) detected a large container ship, later identified as the "TIAMAT," in international waters in the Eastern Pacific Ocean. The USCG cutter diverted to intercept the TIAMAT. Upon arrival at the scene, the USCG lawfully initiated radio contact with the TIAMAT. An individual aboard the TIAMAT who spoke with the USCG advised that the vessel was registered in Tanzania, that its last port of call was Manta, Ecuador, and that it was traveling to Ensenada, Mexico, to dry-dock.

The USCG found several factors to be suspicious. For example, the individual with whom radio contact was made was hesitant in answering some of the basic questions about the last port of call and next port of call, location record information reflected that the TIAMAT had loitered for an extended period of time near the Colombia/Ecuador border, which is a known location for cocaine distribution, and the TIAMAT was navigating a track line that was not the most direct route toward the next port of call, which would be irregular for a cargo vessel attempting to minimize travel time and costs. The USCG further observed that the TIAMAT was riding very high in the water, which suggested it was not carrying a full load of cargo.

The USCG lawfully boarded the TIAMAT and took control of the vessel. The USCG identified thirteen crewmembers aboard. The defendant was not aboard the vessel. Extensive searches were conducted of the TIAMAT, but there was no legitimate cargo found onboard. The USCG was unable to access some of the ballast tanks while at sea, so the TIAMAT was directed into Puerto Quetzal, Guatemala, so that the search could be completed.

United States law enforcement authorities in Puerto Quetzal lawfully interviewed the crew members aboard the TIAMAT. Several admitted that there were drugs onboard. Law enforcement authorities identified a raised area at the bottom of a ballast tank that had a putty-like material over it. When the putty was removed, law enforcement authorities observed an access hatch that had been cut off and then re-bolted with screws. When they opened the hatch, they found numerous packages filled with a substance that appeared to be cocaine. Field testing (and subsequent lab testing) of the contents of two packages determined that they contained cocaine. In total, law enforcement authorities recovered approximately 3,400 kilograms of the substance.

The defendant, who is Colombian, is the brother-in-law of Y.L., who was the organizer of the drug shipment operation involving the TIAMAT. **RAMIREZ MARMOLEJO** assisted Y.L.

2

managing money to pay the crew and make repairs on the ship. Specifically, he had control of accounts used by Y.L. and cut checks from those accounts to pay crew members and to purchase equipment to repair the TIAMAT. When performing this work, **RAMIREZ MARMOLEJO** was fully aware that the TIAMAT was being readied to ship a large quantity of cocaine and that his actions were furthering the conspiracy to move the cocaine. The government has travel records showing **RAMIREZ MARMOLEJO** traveling to Peru around the time when the TIAMAT was docked there and hotel records showing where he stayed. Numerous cooperating witnesses have confirmed that **RAMIREZ MARMOLEJO** was present in Chimbote, Peru, where repairs were being made to the TIAMAT, and that **RAMIREZ MARMOLEJO** was present during meetings in which Y.L. and **RAMIREZ MARMOLEJO** discussed the cocaine shipment with members of the crew and gave them extra money because the shipment involved cocaine.

Following the seizure of the cocaine, the United States sought permission from Tanzania, the foreign nation where the TIAMAT is registered, to consent and waive objection to the enforcement of United States law by the United States with respect to the crew, vessel, and drugs. Tanzania granted the waiver, which transformed the TIAMAT into a "vessel subject to the jurisdiction of the United States" under Title 46, United States Code, Section 70502(c)(1)(C).

**RAMIREZ MARMOLEJO** acknowledges that although he was not aboard the TIAMAT when it was intercepted at sea by the Coast Guard, he conspired with the crew members and others to prepare the vessel to receive the cocaine and ship it.

This proffer of evidence is not intended to constitute a complete statement of all facts known by the government, but rather is a minimum statement of facts intended to prove the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the defendant's plea of guilty.

_____
DAVID HALLER
Assistant United States Attorney

6/1/2021
Date

_____
FABER ADRIAN RAMIREZ MARMOLEJO

05-28-21
Date

_____
JUAN BERNAL
Attorney for Ramirez Marmolejo

6/1/2021
Date

4